**Nicholson v. Landis**
**Case No. 1404**
**Athens County (4th)**
**Decided February 27, 1990**
[Cite as 1 AOA 146]

*Gwinn & Wallace, Mr. James A. Wallace and Ms. Susan L. Gwinn, Athens, Ohio, for Appellant,*

*Bricker & Eckler, Mr. Michael J. Renner, Columbus, Ohio, for Appellee, O'Bleness Memorial Hospital,*

*Porter, Wright, Morris & Arthur, Mr. William M. Todd, Columbus, Ohio, for Appellee, Dr. Phillip D. Kinnard.*

STEPHENSON, J.,

This is an appeal from two judgments entered by the Athens County Court of Common Pleas, one granting a motion for summary judgment whereby O'Bleness Memorial Hospital (O'Bleness), defendant below and appellee herein, was dismissed from the case and the other upon a jury verdict finding in favor of Dr. Phillip D. Kinnard (Kinnard), defendant below and appellee herein. Judith A. Nicholson, plaintiff below and appellant herein, assigns the following errors:

"I. THE TRIAL COURT ERRED IN SUSTAINING THE MOTION OF DEFENDANT-APPELLEE O'BLENESS MEMORIAL HOSPITAL FOR CHANGE OF VENUE AND IN TRANSFERRING THIS CASE FROM FRANKLIN COUNTY TO ATHENS COUNTY.

II. THE TRIAL COURT ERRED IN SUSTAINING THE MOTION OF DEFENDANT-APPELLEE O'BLENESS MEMORIAL HOSPITAL FOR SUMMARY JUDGMENT AND IN DISMISSING O'BLENESS MEMORIAL HOSPITAL AS A PARTY DEFENDANT.

III. THE TRIAL COURT ERRED IN EXCLUDING FROM EVIDENCE THE TESTIMONY OF FRANCIS C. JACKSON, M.D. ONL [sic] THE ISSUE OF LIABILITY.

IV. THE TRIAL COURT ERRED IN ADMITTING INTO EVIDENCE THE DECISION OF THE ARBITRATION PANEL.

V. THE TRIAL COURT IMPROPERLY INSTRUCTED THE JURY ON THE STANDARD OF CARE REQUIRED OF DEFENDNAT [sic]-APPELLEE PHILIP D. KINNARD, M.D."

The following facts are pertinent to this appeal. On March 5, 1983, at the intersection U.S. Route 50 and State Route 329 in Athens County, Ohio, an automobile operated by James E. Landis collided with a motorcycle being operated by Robert H. Nicholson (decedent) and on which appellant was a passenger. Both appellant and decedent incurred serious injuries as a result of the accident and were transported to O'Bleness for treatment.

Dr. John Ortman was called by one William Cooley, a friend of appellant and decedent, and was asked to go to O'Bleness to treat the Nicholsons. Before proceeding to the hospital, Dr. Ortman telephoned Dr. David Brown, the attending emergency room physician at O'Bleness, and after discussing the case, Dr. Ortman told Dr. Brown to call Kinnard. Dr. Ortman went to the hospital and began treatment of the Nicholsons. However, after Kinnard arrived at O'Bleness, both Dr. Brown and Dr. Ortman believed Kinnard to be ultimately responsible for the care and treatment of decedent.

After examining decedent, Kinnard decided that decedent should be transferred to Saint Anthony Hospital in Columbus. Kinnard discussed his decision with both Dr. Brown and Dr. Ortman and decedent was subsequently placed in an ambulance for transport to Columbus. Decedent, during transport, became more combative and lost consciousness. Decedent died at Lancaster-Fairfield Community Hospital at 12:45 A.M. on March 6, 1983.

Appellant filed suit on her own behalf and as administratrix of decedent's estate against James E. Landis and his parents in Athens, Ohio. She subsequently filed suit, on March 2, 1984, in Franklin County and named as defendants, inter alia, Landis, his parents, Kinnard and O'Bleness. The only reason venue was proper in Franklin County was because Landis and his parents resided in Franklin County. Appellant apparently settled her claim against the Landis's in the Athens County case and, on November 7, 1984, dismissed the Landis's from the Franklin County action.

Upon motion of some of the defendants, the trial court dismissed the Franklin County case for lack of venue since the Landis's were no longer parties. In an entry filed on June 13, 1985, the Franklin County Court of Appeals reversed and held that any claim of improper venue was waived for failure to timely raise the issue.

O'Bleness filed for summary judgment on June 12, 1987. While the motion was pending, the cause was referred to arbitration pursuant to R.C. 2711.21 and Franklin County Local Rule 61 on June 22, 1987. On November 12, 1987, the arbitration panel filed their decision with the court, which decision reads as follows:

"It is a unanimous decision of the Panel after the evidence adduced at the hearing and subsequently reviewing the Deposition testimony, the briefs and other matters that defendant O'Bleness Hospital be absolved from liability.

/s/ Karl H. Schnieder
Robert E. Frost
Richard M. Huhn

Further it is the majority decision of the Panel that Defendant Philip Kinnard be absolved from liability.

/s/ Karl H. Schnieder
Robert E. Frost
Dissenting /s/ Richard M. Huhn"

Appellant rejected the decision of the panel and filed an amended complaint pursuant to R.C. 2711.21(C) on December 11, 1987.

On February 8, 1988, the court sustained another motion for change of venue from Franklin County to Athens County. The new motion was based upon the movant's assertion that new facts had arisen since the previous motion--i.e., neither appellees nor the court was aware that appellant had filed the case against the Landis's in Athens County before she filed the case in Franklin County. In granting the motion, the court stated the following:

"[A]s a matter of law that where a court lacks subject matter jurisdiction over a cause of action and personal jurisdiction over the Defendant named in that cause of action, the presence of such Defendant named as a named party in the case can not be utilized to satisfy a venue criterion under Civ. R. 3(B).

Succinctly stated, a case is not properly venued in a county solely due to the naming of a Defendant over which the Court lacks personal jurisdiction and also lacks subject matter over the stated cause of action.

It is apparent that the Landises were named as Defendants in this case solely in order to allow Plaintiff to prosecute her malpractice cause of action against the remaining Defendants away from Athens County. In light of this and Plaintiff's failure to fully apprise the Court of Appeals of all relevant facts, this Court holds that extraordinary circumstances exist such that the Court of Appeal's prior ruling should not, in the interest of justice, be deemed to

be the 'law of this case.' Accordingly, this Court finds that Defendant's motion for a change of venue pursuant to Civ. R. 3(C)(1) has been timely asserted.

Further, this Court finds that this action is not properly venued in Franklin County, and holds that pursuant to Civ. R. 3(B)(1), (2), (3), and (6) the County of proper venue is Athens County."

During the pendency of the case, all defendants were dismissed except O'Bleness and Kinnard.[fn1] On June 14, 1988, the Athens County Court of Common Pleas filed an entry sustaining O'Bleness's June 12, 1987 motion for summary judgment. Thus, when the case went to trial on July 11, 1988, only Kinnard remained a defendant. At the end of the trial, the jury returned a verdict finding that Kinnard was not negligent.

In her first assignment of error, appellant asserts that the Franklin County Court of Common Pleas erred in sustaining the second motion to change venue. Appellant contends that since the Franklin County Court of Appeals had already determined that any error in venue was waived, that decision became the law of the case on the issue of venue, citing *Nolan v. Nolan* (1984), 11 Ohio St. 3d 1. Therefore, appellant concludes, the court's only option was to deny second motion for change of venue.

The Ohio Supreme Court in *Nolan*, supra, stated the following with respect to the law of the case:

"Briefly, the doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. *Gohman v. St. Bernard* (1924), 111 Ohio St. 726, 730, reversed on other grounds *New York Life Ins. Co. v. Hosbrook* (1935), 130 Ohio St. 101 [3 O. O. 138]; *Gottfried v. Yocum* (App. 1953), 72 Ohio Law Abs. 343,345.

The doctrine is considered to be a rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results. *Gohman, supra,* at 730-731. However, the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution.

See *State, ex rel. Potain, v. Mathews* (1979), 59 Ohio St. 2d 29, 32 [13 O.O. 3d 17].

In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts. See, *e. g., State, ex rel. Special Prosecutors, v. Judges* (1978), 55 Ohio St. 2d 94 [9 O.O. 3d 88]; *Charles A. Burton, Inc. v. Durkee* (1954), 162 Ohio St. 433 [55 O.O. 247]; *Schmelzer v. Farrar* (1976), 48 Ohio App. 2d 210, 212 [2 O.O. 3d 178]; *Miller v. Miller* (1960), 114 Ohio App. 235 [19 O.O.2d 108]. Thus, where at a rehearing following remand a trial court is confronted with substantially the same facts and issues as were involved in the prior appeal, the court is bound to adhere to the appellate court's determination of the applicable law. See, generally, *Thomas v. Viering* (App. 1934), 18 Ohio Law Abs. 343, 344; *Loyer v. Kessler* (App. 1925), 3 Ohio Law Abs. 396. For additional authorities, see *Williams v. Board of Trustees* (1924), 210 App. Div. 161, 205 N. Y. Supp. 742; *Littmann v. Harris* (1913), 157 App. Div. 909, 142 N.Y. Supp. 341. Moreover, the trial court is without authority to extend or vary the mandate given. *Briggs v. Pennsylvania RR. Co.* (1948), 334 U.S. 304, 306; *United States v. Pink* (S.Ct. 1942), 36 N.Y. Supp. 2d 961, 965; *Hampton v. Superior Court* (1952), 38 Cal. 2d 652, 655, 242 P.2d 1; *In re Estate of Baird* (1924), 193 Cal. 225, 258, 223 P. 974; *Puritan Leasing Co. v. Superior Court* (1977), 76 Cal. App. 3d 140, 147, 142, Cal. Rptr. 676."

Appellant asserts that there were no extraordinary circumstances in the case at bar which would have justified the Franklin County Court of Common Pleas in disregarding the Court of Appeals' opinion. We disagree.

As stated by the Court of Common Pleas, there were certain factors present which were not known to the Court of Appeals when it ruled that venue was proper, to wit: (1) appellant had filed another action against the Landis's in Athens County, (2) because of the action in Athens County, the Franklin County Court had no jurisdiction over the Landis's, and (3) there was never any attempt by appellant to

obtain service of process over the Landis's in the Franklin County action.

From these facts, the Franklin County Court of Common Pleas could properly conclude that appellant named the Landis's as defendants in the Franklin County suit merely to obtain venue in that county. Under these circumstances, it would be unjust to allow appellant to reap the fruits of her failure to disclose the pendency of the action in Athens County. Accordingly, appellant's first assignment of error is overruled.

In her second assignment of error, appellant asserts that the trial court erred in granting summary judgment in favor of O'Bleness. Appellant asserts that Kinnard was the hospital's agent and, thus, the hospital was liable for his negligence. O'Bleness asserts, to the contrary, that the only relationship between it and Kinnard was that Kinnard had staff privileges which is insufficient to create an agency relationship.

Where a party moves for summary judgment, a court should grant the motion only where the following criteria set forth in Civ. R. 56(C) are met: (1) no genuine issue of any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most favorably toward the party against whom such motion is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St. 2d 317. We conclude that the motion was properly granted in the case sub judice.

In the case at bar, there were no allegations of actual negligence against O'Bleness. Thus, the only way liability could be imposed upon O'Bleness is if Kinnard was himself negligent and was, further, an agent of O'Bleness. There are two theories of agency which have possible application in the case sub judice, to wit: (1) actual agency and (2) agency by estoppel.

An actual agency relationship exists if the principal, i.e., O'Bleness, controls or has the right to control the agent, i.e. Kinnard. *Councell v. Douglas* (1955), 163 Ohio St. 292. Appellant asserts that there was such a relationship for two reasons. First, appellant asserts that at the arbitration hearing Kinnard stated that either Dr. Ortman or Dr. Brown could have overruled his decision to transport decedent to Columbus. Thus, appellant

concludes, since O'Bleness's agent, Dr. Brown, as the emergency room physician, could control Kinnard's actions, Kinnard was also O'Blenness's agent.

We first note that Dr. Brown was not an actual agent of O'Bleness. He was not on the payroll nor did he receive any compensation from O'Bleness. He was, in fact, an independent contractor. However, he would probably be considered an agent of O'Bleness through the doctrine of agency by estoppel. See e.g. *Hannola v. Lakewood* (1980), 68 Ohio App. 2d 61. Hence, appellant urges this court to find that Kinnard was an actual agent of O'Bleness because he was an agent of Dr. Brown, who was an agent of O'Bleness through estoppel.

Fortunately, we do not need to address the merits of such a theory because we find that the facts do not support appellant's contention that Kinnard was Dr. Brown's agent. A transcript of the arbitration hearing to which appellant refers was never made a part of the record. Appellant attached one page of the transcript to her memorandum contra summary judgment. This is not sufficient to bring that evidence before the court. Further, it is unclear from the portion of the transcript attached to determine whether Kinnard was referring to the specific circumstances in the case at bar or in the abstract.

All of the other evidence before the court indicates that Dr. Brown had no control over Kinnard. Dr. Ortman stated in his deposition that he believed Kinnard was in control of decedent's care after he arrived. Dr. Brown also stated in his deposition that he ceased care of decedent after Kinnard arrived. Further, when questioned about the transport of decedent, Dr. Brown stated that it was not his decision to make. Finally, Dr. Kinnard stated in his deposition that he considered himself the ultimate decision maker in determining whether or not to transport decedent.

There appears to be no question of material fact concerning the control of Dr. Brown over Kinnard. Since Kinnard had the final say in deciding whether to transport decedent, we conclude there is no merit to appellant's first theory of actual agency.

Appellant's second argument with respect to actual agency rests upon the fact that Kinnard had staff privileges at O'Bleness. Appellant asserts that since the granting or revoking of staff privileges is analogous to hiring or firing, O'Bleness exercised control over Kinnard.

Appellant cites *Hannola,* supra, for the proposition that extension of staff privileges is sufficient to raise a question of fact as to whether agency exists. We are unpersuaded by appellant's argument.

We first note that we are not bound by the Cuyahoga County Court of Appeals' decision in *Hannola.* Further, we note that the Franklin County Court of Appeals is apparently in conflict with *Hannola.* In *Stratso v. Song* (1984), 17 Ohio App. 3d 39, that court stated that the fact that a doctor has an office in the hospital does not alone make him an agent of the hospital. Instead there must be shown induced reliance under the theory of agency by estoppel.

Further, in *Griffin v. Matthews* (1987), 36 Ohio App. 3d 228, the Court of Appeals for Butler County held that "[t]he mere practice of medicine in a hospital by a doctor with staff privileges is not of itself sufficient to create an agency by estoppel and hold the hospital liable." Manifestly, if such evidence is insufficient to show agency by estoppel, it is certainly insufficient to create actual agency.

Finally, attached to its motion for summary judgment was the affidavit of one Richard F. Castrop, Executive Director of O'Bleness, wherein he stated that O'Bleness, "does not have the right to control or dictate to physicians the manner and mode by which they make discretionary medical judgments." Accordingly, since there is no evidence in the record that O'Bleness had any control over Kinnard, we hold as a matter of law that there was no actual agency relationship between O'Bleness and Kinnard.

Appellant also argues that even in the absence of an actual agency relationship, the doctrine of agency by estoppel should apply to the case at bar. There have been several cases which have held that a hospital is estopped from denying liability for negligent care administered in its emergency room by emergency room personnel even though the personnel are not employees of the hospital but are instead independent contractors. See e.g. *Hannola,* supra; *Griffin,* supra.

The doctrine of agency by estoppel has been explained in *Johnson v. The Wagner Provision Co.* (1943), 141 Ohio St. 584, paragraph four of the syllabus, as follows:

"The doctrine of agency by estoppel, as it might be invoked by a plaintiff in a tort action, rests upon the theory that one has

been led to rely upon the appearance of agency to his detriment. It is not applicable where there is no showing of induced reliance upon an ostensible agency."

The reasoning for applying the doctrine in the hospital emergency room setting is set forth in *Hannola,* as follows:

"By calling itself a 'hospital' and by being a full- service hospital including an emergency room as part of its facilities, an institution makes a special statement to the public when it opens its emergency room to provide emergency care for people. In essence, an agency by estoppel is established by creating an effect: that is, the appearance that the hospital's agents, not independent contractors, will provide medical care to those who enter the hospital. The patient relies upon this as a fact and he believes he is entering a full-service hospital.

The agency by estoppel created by the institution purporting to be a hospital is somewhat different than the narrow definition provided by *Rubbo [v. The Hughes Provision Co.* (1941), 138 Ohio St. 178]. In that case, public advertisements disclaiming agency might have insulated the unwilling principals. The people who relied on the ostensible agency might have acted differently with knowledge that there was no actual agency. Here, we are faced with the situation of injured or ill patients in need of emergency medical treatment. Realistically, a person has no meaningful choice under the circumstances. He needs treatment and will turn to his local hospital to provide it regardless of prior notice that the physicians are independent contractors. The patient thinks of 'Lakewood Hospital' in his time of need, not the West Shore Medical Care Foundation.

Further, sound public policy demands that the full- service hospital not be permitted to contractually insulate itself from liability for acts of medical malpractice committed in its emergency room. First, the emergency room is an integrally related part of the full-service hospital. The hospital may not pretend that this

essential element of its public service treatment facilities is a separate entity. Moreover, the nature of the situation when people turn to the hospital and its emergency room facilities for treatment is one fraught with crisis. People are often highly emotional. There is frequently no time to choose. Indeed, time is of the essence. The chances of going elsewhere for treatment are remote.

Given the relationship of the emergency room to the full-service hospital and the crisis circumstances under which people seek emergency treatment, public policy requires that the hospital not be able to artificially screen itself from liability for malpractice in the emergency room."

The doctrine in *Hannola* has been expanded to encompass other situations. In *Stratso*, supra, the Franklin County Court of appeals held that where a hospital provides anesthesiology services, it may be responsible for the negligent acts of the anesthesiologist who is an independent contractor because patients do not choose the anesthesiologist but instead rely upon the hospital to provide competent anesthesiologists. Further, in *Funk v. Hancock* (1985), 26 Ohio App. 3d 107, the Fayette County Court of Appeals held that agency by estoppel was applicable in a case where the negligent acts were performed not by the emergency room physician but instead by a consulting physician called in by the emergency room physician.

Appellant asserts that the case sub judice is very similar to *Funk*, supra, in that Kinnard was called by Dr. Brown to aid in the treatment of decedent. We disagree. We find *Funk*, supra, to be distinguishable from the case at bar.

While Kinnard was actually called by Dr. Brown, it was done at the request of Dr. Ortman. Appellant contends that from a portion of Dr. Brown's deposition, wherein he stated, "we discussed it over the phone and decided that he [decedent] needed surgical intervention and Dr. Kinnard was decided on the one to be called," that Dr. Brown, in part decided which surgeon to call. We are unpersuaded by appellant's assertion. Dr. Ortman specifically stated in his deposition that "I instructed Dr. Brown to contact him [Kinnard]." Further, Kinnard stated that he was not the on-call physician who would ordinarily be called if a patient needed a surgeon. Kinnard further noted that the only reason he could think of why he was called was at the request of Dr. Ortman who had requested him as a surgeon on a number of occasions. Hence, the facts clearly show that Kinnard was called at the request of Dr. Ortman.

Appellant also asserts that Dr. Ortman was not decedent's family physician and, therefore, his actions should be imputed upon O'Bleness. While Dr. Ortman was not in fact decedent's family physician, he was in essence decedent's physician for purposes of this case. Dr. Ortman was called by William Cooley, a friend of appellant and decedent, after the accident occurred. Cooley asked Dr. Ortman to go to the hospital to treat appellant and decedent. In fact, Dr. Ortman's name was put on the emergency room treatment sheet as appellant's and decedent's family physician. Dr. Ortman, therefore, acted as decedent's family physician. Equally important, since Dr. Ortman was not under contract to be at O'Bleness and was not in the emergency room for O'Bleness, he was not an agent of O'Bleness, either actual or through estoppel.

We, therefore, conclude that Kinnard was chosen as surgeon by Dr. Ortman, decedent's acting family physician.

A hospital is not liable, as a matter of law, for negligent services rendered by a physician chosen by an injured party or his own physician. See *Prince v. Saint Anthony Hospital* (October 16, 1985), Franklin App. No. 85 AP-174, unreported.

Appellant finally argues that a hospital should be liable for any negligence which occurs in the emergency room regardless of the provider of the care. Again, we disagree. *Hannola* and its progeny stand for the proposition that a hospital should be held liable for negligence which occurs by personnel which the hospital provides, whether as employees or as independent contractors, in its emergency room. The reasoning is that an injured party does not choose particular doctors, but chooses an emergency room and relies on the hospital to provide adequate personnel.

However, in the case at bar, the purported negligent acts were performed by a doctor chosen by decedent's acting family physician. Since O'Bleness did not choose Kinnard to perform the services and had no control over the services rendered, it would be inequitable to hold O'Bleness liable in the case at bar.

For the aforementioned reasons, the court properly granted O'Bleness's motion for

summary judgment. Appellant's second assignment of error is overruled.[2]

In her third assignment of error, appellant asserts that the court below erred in refusing to allow her expert witness, Dr. Francis C. Jackson, to testify on the issue of liability. She asserts that Dr. Jackson was competent to testify, and the courts refusal constituted prejudicial error.

Whether or not a doctor is competent to testify at trial on the issue of liability is governed by Evid. R. 601(D), which reads, in pertinent part, as follows:

"Every person is competent to be a witness except:
* * *
(D) A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care or treatment of any person, unless the person testifying is licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state, and unless such person devotes three-fourths of his professional time to the active clinical practice in his field of licensure, or to its instruction in an accredited university."

Accordingly, there are two requirements which must be satisfied before a doctor is competent to testify on the issue of liability. First, the doctor must be licensed to practice medicine in Ohio or any other state. Second, the doctor must devote three-fourths of his professional time to active clinical practice, or to its instruction in an accredited university. Since Dr. Jackson was licensed in both Pennsylvania and Texas, he satisfied the first requirement.

The pertinent issue before this court, therefore, is whether Dr. Jackson satisfied the second requirement. There is little case law on Evid. R. 601(D). However, from the cases which have been decided, we find that Dr. Jackson did not satisfy the second requirement of Evid. R. 601(D).

The Ohio Supreme Court in *McCrory v. State* (1981), 67 Ohio St. 2d 99, stated that while clinical practice generally describes physicians "who spend three-fourths of their professional time treating patients, it also includes the physician-specialists whose work is so related or

adjunctive to patient care as to be necessarily included in that definition..." Under that analysis, the court found that a person who did medical research and supervised research done by a staff of doctors who evaluated and developed new drugs was competent to testify about the use of a drug he studied.

In *Goldstein v. Kean* (1983), 10 Ohio App. 3d 255, the Court of Appeals for Franklin County held that a physician who spent 80 percent of his professional time evaluating workers compensation claims but did not personally examine, diagnose, or treat patients did not satisfy the second requirement of Evid. R. 601(D). From *McCrory* and *Goldstein*, it is apparent that the important issue is how closely the purported expert's work is related to patient care.

In the case at bar, Dr. Jackson had performed no surgery at all for three years prior to the trial. He was, at the time of the trial, employed part time as assistant dean for Veteran's Affairs at Texas Tech and was also a professor of surgery. Dr. Jackson stated that he never made rounds anymore except during review conferences and upon an occasional request at the two veterans' hospitals affiliated with the university. Dr. Jackson admitted he rarely had an opportunity to treat patients anymore. It is clear that Dr. Jackson did not satisfy the second requirement of Evid. R. 601(D) through clinical practice.

However, Dr. Jackson also had some teaching duties as professor of surgery. Appellant urges this court to adopt a very broad definition of what constitutes instruction of clinical practice. We have been unable to find any cases which discuss instruction of clinical practice with respect to Evid R. 601(D), however, we conclude that under any definition of instruction of clinical practice, Dr. Jackson fell short. Dr. Jackson admitted that 50 percent of his time was spent on administrative duties such as interviewing prospective residents and keeping records. He spent little or no time instructing or dealing with residents. His only actual teaching consisted of two two-hour lectures every twelve weeks. While devoting three fourths of one's professional time to instruction of clinical practice does not necessitate being in the classroom every hour, it certainly requires more than four hours of teaching every twelve weeks.

Because Dr. Jackson did not satisfy all of the requirements of Evid. R. 601(D), the court below did not err in preventing him from

testifying on the issue of liability. We finally note that we cannot see how Dr. Jackson's testimony would have helped appellant's case. She had two other medical experts who did testify that they believed that Kinnard did not act as a surgeon of ordinary skill, care, and diligence would have acted. Thus, Dr. Jackson's testimony merely would have been cumulative. Accordingly, appellant's third assignment of error is overruled.

In her fourth assignment of error, appellant asserts that the court below erred in admitting into evidence the decision of the arbitration panel. R.C. 2711.21(C) governs the admissibility of an arbitration decision which is rejected and reads as follows:[3]

"If the decision of the arbitration board is not accepted by all parties thereto, the pleadings shall be amended to aver both the fact that the controversy was submitted to an arbitration board. The decision of the arbitration board, and any dissenting opinion written by any board member, shall be admitted into evidence at trial upon the offer of any party, if the court conducts a review of the arbitration decision and any other relevant information submitted by the parties and concludes that:

(1) The findings of fact by the arbitration board were not clearly erroneous;
(2) The decision is in accordance with applicable law;
(3) The procedures required for conducting the hearing and rendering the decision were followed fairly and properly without prejudice to either party."

The arbitration decision in the case at bar contained no findings of fact. Appellant asserts that the court below could not have determined that the first of the three enumerated requirements, supra, was satisfied. Appellant concludes that the only determination the court below could have properly made was that the findings were clearly erroneous, and, thus, the court should not have admitted the arbitration decision into evidence.

We note that nowhere in R.C. 2711.21 is there a requirement that the arbitration panel must prepare findings of fact. We hold, therefore, that the absence of findings of fact does not necessarily render an arbitration decision inadmissible. In fact, while the admissibility of the arbitration decision was not

at issue, the Ohio Supreme Court, in *Smith v. Mitchell* (1988), 35 Ohio St. 3d 237, tacitly approved of the admission into evidence of an arbitration decision virtually identical in content to the one in the case sub judice. See also *Herbert v. Young* (1984), 23 Ohio Misc. 2d 13.

The court in the case at bar stated that the arbitration decision met the three requirements enumerated in R.C. 2711.21. If appellant believed that any of the requirements were not met, she had the opportunity, pursuant to R.C. 2711.21(C), to submit any information relevant to the requirement in question. There is nothing in the record to indicate that appellant availed herself of that opportunity. In the absence of any evidence to the contrary, we hold that the court below did not err in determining that the three requirements were satisfied and in then admitting the arbitration decision into evidence. Appellant's fourth assignment of error is overruled.

In her final assignment of error, appellant asserts that the court below improperly instructed the jury on the standard of care required by Kinnard. The jury instructions, which covered approximately 20 pages in the transcript of proceedings, read, in pertinent part, as follows:

"The physician involved in this action is a specialist. A specialist in this case is a general surgeon who holds himself out as having particular training and experience in general surgery. The standard of care for a general surgeon in the practice of this specialty is that of a reasonable specialist practicing in general surgery, regardless of where he practices. A specialist in any one branch has the same standard of care as all other specialists in that branch. If you find by the greater weight of the evidence the defendant failed to use that standard of care, then you may find that he was negligent. A physician has a duty to make a proper, skillful, careful diagnosis of his patient's illness. *However, a mistake in judgment on the part of a physician is not in and of itself, negligence. If you find that Dr. Philip D. Kinnard, M.D. possess [sic] ordinary learning and skill, that in his diagnosis and treatment of Mr. Nicholson he used such care as is ordinarily used in like or similar circumstances of physicians of reasonable and average skill at the time in question, he is not negligent even though the*

*judgment which he arrived at may subsequently have been proved to be incorrect."* (Emphasis added.)

Appellant objects to the underscored portion of the instructions. Even though the "mistake in judgment" instruction is essentially a correct statement of the law, see 61 American Jurisprudence (1981), 341-342, Physicians, Surgeons and Other Healers, §209; *Finley v. United States* (N.D. Ohio 1970), 314 F. Supp. 905, appellant argues that it could mislead a jury. To support her contention that a "mistake in judgment" instruction is misleading, appellant cites *Rogers v. Meridian Park Hospital* (Or. 1989), 772 P. 2d 929, wherein the Oregon Supreme Court determined that such an instruction was misleading and reversed the cause for a new trial.

If this court were bound by the Oregon Supreme Court, we would reverse based upon *Rogers.* However, *Rogers* is not controlling. The law in Ohio with respect to errors in jury instructions is set forth in *Snyder v. Stanford* (1968), 15 Ohio St. 2d 31, paragraph three of the syllabus, as follows:

"Reversible error ordinarily can not be predicated upon one paragraph, one sentence or one phrase of the general charge to the jury. Where the court's charge to the jury, considered as a whole, is not prejudicial to the objecting party, no reversible error results from a misstatement or ambiguity in a portion thereof." (See also *Wagenheim v. Alexander Grant & Co.* (1983), 19 Ohio App. 3d 7.)

The jury instructions in the case at bar, when considered as a whole, properly state the law. We hold that the two sentences objected to by appellant do not render the entirety of the 20 page instruction misleading, particularly in light of the fact that the portion objected to did correctly state the law. Accordingly, appellant's fifth assignment of error is overruled.

For the aforementioned reasons, the judgment of the court below is affirmed.

It is ordered that appellees recover of appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of filing of this Entry.

*JUDGMENT AFFIRMED*

GREY and HARSHA, JJ., Concur

---

[1] We note that one of the defendants, Dr. Richard Roe, whose real name was unknown, was not dismissed from the case. However, since he was never served and made a party to the case, a dismissal was unnecessary with respect to him.

[2] In light of our determination of appellant's third, fourth, and fifth assignments of error, even if summary judgment was improper, the error was harmless because Kinnard was found not negligent and the hospital could only be liable if Kinnard was negligent.

[3] R.C. 2711.21 was amended in 1987 and no longer allows an arbitration decision to be admitted into evidence in any circumstances. However, the amendment only applies to "civil actions that are commenced on or after the effective date [of October 20, 1987] and that are based upon claims for relief that arise on or after that date, and only to conduct that occurs on or after that date." §3, H.B. 327. Accordingly, amended R.C. 2711.21 is inapplicable to the case at bar.