McCrory et al., Appellants, *v.*
The State of Ohio et al., Appellees.

[Cite as McCrory v. State (1981), 67 Ohio St. 2d   99.]

(No. 80-755—Decided July 8, 1981.)

100

*Messrs. McConnaughey, Stradley, Mone & Moul,* and *Mr. Edward F. Whipps,* and *Michael F. Colley & Associates, Mr. Michael F. Colley* and *Mr. Jerry L. Maloon,* for appellants.

*Mr. William J. Brown,* attorney general, and *Mr. Melvin D. Weinstein,* for appellees.

PAUL W. BROWN, J. We conclude that with Dr. Buchanan's testimony the judgment below was soundly based upon the evidence, but that Dr. Buchanan's testimony was crucial to the validity of the judgment since the trial court clearly relied on it heavily in making its decision.

The issue for resolution, therefore, is whether the trial court erred in allowing Dr. Buchanan to testify over appellants' objection that Dr. Buchanan was incompetent to testify because he did not devote three-fourths of his professional time to the active clinical practice of medicine as required by R. C. 2743.43.

R. C. 2743.43[1] provides, in relevant part, that:

"(A) No person shall be deemed competent to give expert testimony on the liability issues in a medical claim, as defined

---

[1] This statute was enacted as part of the Ohio Medical Malpractice Act., Am. Sub. H. B. No. 682 (136 Ohio Laws 2809, 2823). R. C. 2743.43 has since been incorporated into Evid. R. 601, which provides:

"Every person is competent to be a witness except:

"* * *

"(D) A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care or treatment of any person, unless the person testifying is licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state, and unless such person devotes three-fourths of his professional time to the active clinical practice in his field of licensure, or its instruction in an accredited university."

in division (D)(3) of section 2305.11 of the Revised Code, unless:

"(1) Such person is licensed to practice medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery by the state medical board or by the licensing authority of any state.

"(2) Such person devotes three-fourths of his professional time to the active clinical practice of medicine and surgery, osteopathic medicine and surgery, or podiatric medicine and surgery, or its instruction in an accredited university."

Nowhere in the statute is the phrase "active clinical practice" defined. Dictionary definitions of phrases such as "clinical" and "clinical medicine" point to patient care as a basic requirement and further suggest bedside care. Hence, we conclude the statute deals with the basic unfairness of permitting the pointing of accusatory fingers by those who do not take care of the sick toward those who do. More specifically, we conclude that the purpose of the statute is to preclude testimony by the physician who earns his living or spends much of his time testifying against his fellows as a professional witness, and to prevent those whose lack of experiential background in the very field they seek to judge, the clinical practitioner, makes the validity of their opinions suspect, from expressing those opinions for pay or otherwise.

It is self-evident, however that we must devise a definition of active clinical practice of medicine that is not so narrow as to include only the physician who is in direct contact with the patient at his bedside. For such a definition would exclude the large panoply of medical expertise of various physician-specialists who work daily in and for our hospitals often assisting, directing, or advising the attending physician in his care of the sick. Such physicians are directly involved in the care of the patient and are usually aware of the progress of the treatment of his health problems and of that treatment's ultimate result. Their ministrations form inseparable parts of that patient's care. Their expertise is necessary in any determination of fault or responsibility. To exclude their testimony in the attempt to determine liability would be unthinkable. For example, the physician-pathologist is often so totally essential at several points in the patient's care that to narrow the defini-

tion of clinical practice so as to exclude his testimony would be absurd as well as totally destructive of the validity of the inquiry into liability. What is true of the pathologist is also true of the radiologist, the hematologist, and perhaps others who are adjunctive to patient care. Therefore, we hold that while the phrase "active clinical practice," contained in R. C. 2743.43(A), primarily describes those physicians who spend three-fourths of their professional time treating patients, it also includes the physician-specialist whose work is so related or adjunctive to patient care as to be necessarily included in that definition for the purpose of determining fault or liability in a medical claim.

Having determined that the phrase "active clinical practice" includes more than those physicians who regularly treat patients directly, we must determine whether Dr. Buchanan falls within this larger definition.

Dr. Buchanan spends 85 percent of his professional time as Director of Clinical Research at Parke-Davis, the company that manufactures Dilantin. In his job, Dr. Buchanan does medical research and supervises the research done by a staff of physicians who evaluate and develop new drugs for use in humans and who detail its characteristics, dosage and usage to physicians such as those employed here by the state. Because of his work, Dr. Buchanan has had a greater opportunity than anyone to study and learn about the effects of Dilantin and has done so. Therefore, Dr. Buchanan's credentials as an expert medical witness, in the instant cause, are exceptional, since his testimony dealt with the issue whether Dilantin was the proximate cause of Edward's cerebellar brain damage.[2] Because of his work, Dr. Buchanan is one of the world's leading authorities on the effects of Dilantin.

Dr. Buchanan is as adjunctive to patient bedside care as the others we have described. The drug in question is manufactured and tested and distributed under his supervision and, after qualifying for approval by the appropriate governmental agencies, the drug is detailed to the physician accompanied by literature describing its uses and dosages, with warnings of

---

[2] While Dr. Buchanan may to some extent have an interest in the outcome of the suit, since his employer is the manufacturer of Dilantin, this should not render him incompetent to testify, but rather, should be taken into account in giving weight to his testimony.

side effects and other caveats. With much reliance on these, the attending physicians treat the patient. Effectiveness of the drug is observed at the bedside and reported in various ways including the mentioned medical literature. The admission of Dr. Buchanan's accumulated and expert knowledge in this field by extension of the definition of clinical practice of medicine is indicated by necessity, and that testimony, entirely trustworthy and credible, does not violate the principle of fairness sought by the statute or any rule of evidence.[3]

The trial court found that Dr. Buchanan was competent to testify as an expert medical witness. "The qualification of competency of a witness to testify as an expert***rests with the trial court, and, on appeal, its ruling with respect to such matters will ordinarily not be reversed unless there is a clear showing that the court abused its discretion." *Ohio Turnpike Comm.* v. *Ellis* (1955), 164 Ohio St. 377, paragraph eight of the syllabus; *Alexander* v. *Mt. Carmel Medical Center* (1978), 56 Ohio St. 2d 155; *State* v. *Maupin* (1975), 42 Ohio St. 2d 473; *Akron* v. *Pub. Util. Comm.* (1966), 5 Ohio St. 2d 237; *Tully* v. *Mahoning Express Co.* (1954), 161 Ohio St. 457. We find that the trial court did not abuse its discretion in allowing Dr. Buchanan to testify over appellants' objection.

Dr. Buchanan was competent to testify. With the inclusion of his testimony, there was competent, credible evidence going to all the essential elements of the case and, therefore, we find that the holdings below were not against the manifest weight of the evidence. *C. E. Morris Co.* v. *Foley Construction Co.* (1978), 54 Ohio St. 2d 279.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

COOK, SWEENEY, LOCHER, HOLMES and C. BROWN, JJ., concur.

CELEBREZZE, C. J., concurs in the judgment.

COOK, J., of the Eleventh Appellate District, sitting for W. BROWN, J.

---

[3] Noteworthy, too, is the fact that Dr. Buchanan's testimony would be material and relevant under his unquestioned expertise qualifications even were he not a physician. His being a physician should not result in the exclusion of his obviously relevant testimony.