GOLDSTEIN, A MINOR, BY HIS NEXT FRIEND, APPELLEE, *v.* KEAN, APPELLANT.

(No. 83AP-236—Decided December 15, 1983.)

*Zacks, Luper & Wolinetz Co., L.P.A., Mr. Frederick M. Luper* and *Mr. Stanley L. Myers,* for appellee Jon Goldstein through his father and next friend, Louis Goldstein.

*Messrs. Porter, Wright, Morris & Arthur, Mr. James E. Pohlman, Mr. William M. Todd* and *Mr. William J. Calore,* for appellant John R. Kean.

NORRIS, J. Defendant, a physician, appeals from a judgment rendered against him in a medical malpractice suit.

The basis of plaintiff's claim was that defendant had negligently set a fracture of his forearm in a manner which resulted in deformity of his arm and a loss of function. In essence, plaintiff contended that defendant set the broken bone in his arm at such an angle that, when the fracture healed, he was unable to rotate his forearm. Defendant argued that the angle at which he set the bone was within acceptable limits, and that the deformity plaintiff ultimately experienced was not the result of his reduction of the fracture and could not have been anticipated.

At trial to the court, plaintiff presented expert medical testimony from two orthopedic surgeons, and defendant's testimony was buttressed by that of an orthopedic surgeon.

Defendant raises these assignments of error:

"I. The trial court erred as a matter of law in denying defendant-appellant John R. Kean, M.D.'s motion *in limine* to exclude the testimony of Joseph Lichtor, M.D., pursuant to Rule 601(D) of the Ohio Rules of Evidence.

"II. The trial court erred as a matter of law in denying defendant John R. Kean, M.D.'s motion *in limine* to exclude the testimony of W. Jerry McCloud, M.D., pursuant to Rule 601(D) of the Ohio Rules of Evidence. * * *"■

The issues raised by the first two assignments of error require an examination of Evid. R. 601(D), the relevant portions of which read as follows:

"Every person is competent to be a witness except:

"* * *

"(D) A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician, * * * unless the person testifying * * * devotes three-fourths of his professional time to the active clinical practice in his field of licensure, or to its instruction in an accredited university."

The Supreme Court has on several occasions addressed the meaning of "active clinical practice" as found in R.C. 2743.43(A)(2), the statutory predecessor of Evid. R. 601(D). In *Levin* v. *Hardwig* (1979), 60 Ohio St. 2d 81 [14 O.O.3d 304], the court reviewed the qualifications of a physician who, due to illness, had retired from an active practice of thirty years, and for the two years prior to trial had been employed by the Veterans Administration to examine and diagnose patients for the purpose of assisting the agency's adjudication board in determining the extent of a patient's disability. He also referred some of these patients to other physicians and recommended proper courses of treatment, and consulted with other physicians. The Supreme Court found that the physician was engaged in the active clinical practice of medicine.

The term was further addressed by the Supreme Court in the syllabus to its opinion in *McCrory* v. *State* (1981), 67 Ohio St. 2d 99 [21 O.O.3d 63]:

"The phrase 'active clinical practice,' contained in R.C. 2743.43(A), primarily describes those physicians who spend three-fourths of their professional time treating patients, but it also includes the physician-specialist whose work is so related or adjunctive to patient care as to be necessarily included in that definition for the purpose of determining fault or liability in a medical claim."

In *McCrory,* defendants' expert witness was the director of clinical research for a manufacturer of the type of medication that was alleged to have caused plaintiff's disability. He spent eighty-five percent of his professional time at that job, and fifteen percent teaching and practicing medicine. Excerpts from the Supreme Court's opinion are helpful to the resolution of this appeal:

"* * * [W]e conclude the statute deals with the basic unfairness of permitting the pointing of accusatory fingers by those who do not take care of the sick toward those who do. * * * [T]he purpose of the statute is to preclude testimony by the physician who earns his living or spends much of his time testifying against his fellows as a professional witness, and to prevent those whose lack of experiential background in the very field they seek to judge, the clinical practitioner, makes the validity of their opinions suspect, from expressing those opinions for pay or otherwise.

"It is self-evident, however, that we must devise a definition of active clinical practice of medicine that is not so narrow as to include only the physician who is in direct contact with the patient at his bedside. * * * For example, the physician-pathologist is often so totally essential at several points in the patient's care that to narrow the definition of clinical practice so as to exclude his testimony would be absurd as well as totally destructive of the validity of the inquiry into liability. What is true of the pathologist is also true of the radiologist, the hematologist, and perhaps others who are adjunctive to patient care. * * *" *Id.* at 103-104.

The court then went on to find that the witness was engaged in the active clinical practice of medicine; his professional activities were "adjunctive to patient bedside care" (*id.* at 104), and his supervision was critical to the development and manufacture of drugs and attending physicians relied upon his instructions when administering them.

The standard to be applied by this court, in reviewing the trial court's decision to admit the testimony of Drs.

Lichtor and McCloud, is whether, in doing so, the court abused its discretion. *McCrory* v. *State, supra,* at 105.

Applying the standards set forth by the Supreme Court in *Levin* v. *Hardwig, supra,* and *McCrory* v. *State, supra,* we conclude that there was testimony before the trial court from which, in its sound discretion, it could conclude that Dr. Lichtor devoted three-fourths of his professional time to the active clinical practice of medicine.

For example, Dr. Lichtor testified that he had actively practiced orthopedic surgery for thirty years, until he became ill two and one-half years previous to his trial deposition, at which time he discontinued his surgery and cut down on his private practice; that, since that time and until approximately a month before his deposition, he had written articles on professional subjects for books and journals, conducted research, and spent seventy-five percent of his professional time on "medical-legal work"; that this "medical-legal work" consisted of examining patients and evaluating their injuries for accident cases, for compensation accidents, and for various federal agencies; that many times he treated the patients he evaluated, and sometimes recommended treatment for them to other practitioners; that he saw patients for "hands-on" patient care every day; and that, because he was no longer ill, he had, in the past month or so, begun to increase his private practice.

To a certain extent, Dr. McCloud's qualifications were similar to those of Dr. Lichtor. Dr. McCloud testified that he was engaged in a general orthopedic practice from 1969 until 1976, when he was involved in an accident which impaired his vision; and that, because of the accident, he modified his practice so that he now spent ten percent of his professional time on "medical/legal consulting work," another ten percent consulting with other physicians to assist in diagnosing and treating patients, and the remaining eighty percent of his time evaluating workers' compensation claims. By contrast with Dr. Lichtor's involvement with patients he evaluated, however, Dr. McCloud did not treat any of the persons whose workers' compensation claims he evaluated, and, in fact, did not mention having even seen these claimants in person for the purpose of examination and diagnosis. Accordingly, we are unable to find in Dr. McCloud's testimony the elements that would indicate that seventy-five percent of his professional activity was "adjunctive to patient care," as was the case in *McCrory* v. *State, supra;* his activity with workers' compensation claims was not of the type that forms an essential link in the chain of services and activities which comprise the comprehensive treatment of patients. Nor did that activity constitute the diagnostic and consultive functions which were present in *Levin* v. *Hardwig, supra.* Clearly, Dr. McCloud did not devote three-fourths of his professional time to the active clinical practice of medicine, and the trial court therefore abused its discretion in admitting his testimony into evidence on the issue of liability. However, for reasons which will be discussed in conjunction with the third assignment of error, the error was not prejudicial to defendant's cause. * * *

The assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE, P.J., and STRAUSBAUGH, J., concur.