JOURNAL ENTRY AND OPINION
The appellants, Dewitt T. Hunt and Susan Hunt, individually and as co-administrators of the Estate of Matthew Terry Hunt, deceased, appeal the jury verdict in favor of the appellees on the appellants' claims of medical negligence and wrongful death. For the reasons set forth below, we reverse the decision of the trial court.
The deceased in this case, Matthew Hunt, was a high school senior when he began to exhibit mental health problems that lead his parents to seek treatment for him at Crossroads Psychiatric Psychological Center (Crossroads) in April 1997. At that time, he was diagnosed with severe depression and began treatment. After graduation, Matthew Hunt attended Duke University in the fall of 1997. Matthew's mental health continued to deteriorate while he was away at school to the point that he left school and returned home before the end of the first semester to receive further counseling from the doctors at Crossroads.
Matthew returned to Duke University in August 1998 and finished his second semester; however, his mental health continued to decline, and in early December of 1998, he received a medical leave from Duke and returned home a second time.
Matthew continued his treatment at Crossroads until he began to express doubts about the effectiveness of the treatment. At that point, Matthew's mother began looking for a new doctor for him. She contacted a psychiatrist named Dr. Gold who had written a book on depression and asked him if he could refer her to someone suited to deal with her son's problems. Dr. Gold's office contacted the appellant and gave her the names of several doctors, including the appellee, Dr. S. Charles Schulz, M.D., who was then the chair of the Department of Psychiatry at Case Western Reserve University and director of the Department of Psychiatry at University Hospitals of Cleveland through University Psychiatrists of Cleveland.
Mrs. Hunt contacted Dr. Schulz and explained to him Matthew's situation and his concerns regarding his current doctor. Dr. Schulz agreed to meet with Matthew and act as a consultant or to render a second opinion. Dr. Schulz met with Matthew twice, both times with his mother present, on January 18, 2000 and January 25, 2000. Dr. Schulz also had a follow-up meeting with both Mr. and Mrs. Hunt on February 4, 2000, without Matthew present, to discuss the situation and to make recommendations concerning Matthew's treatment.
Dr. Schulz was later contacted by Mrs. Hunt who informed him that Matthew had decided to continue his treatment with Dr. Seng, his current doctor at Crossroads. Thereafter, Dr. Schulz had no contact with Matthew or his parents until Mrs. Hunt called on March 1, 2000 attempting to schedule an appointment. When Dr. Schulz was unable to see Matthew on March 1st, his mother made an appointment for Matthew to see Dr. Seng the next day.
The day after Matthew's appointment with Dr. Seng, Mrs. Hunt again called Dr. Schulz attempting to schedule an appointment for that day because her son had informed her that he had been having suicidal thoughts; Dr. Schulz met with Matthew that day. At the end of the session, Matthew appeared to be feeling better. He had stated to both Dr. Schulz and his mother that he wanted Dr. Schulz to be his new doctor. Dr. Schulz asked him how he was feeling and if he was able to return home that night. Matthew shook Dr. Schulz's hand and told him that he was safe to go home.
When Matthew and his mother returned home, he informed his family that he was going to go to his grandmother's home, which was not an unusual occurrence. His family said goodbye to him and went out for dinner. Matthew left his parents' home, stopped at a McDonald's restaurant, drove to his apartment building, which he had yet to move into, went up to his apartment on the seventh floor, opened a window, and jumped to his death.
The appellants filed a complaint on or about February 17, 2000 alleging that Matthew's suicide was a direct result of the various health care professionals that treated him from April 26, 1997 until the time of his death. On the morning of trial, all of the defendants, except Dr. Schulz and his employer, University Psychiatrists of Cleveland, reached a settlement agreement with the family. At the conclusion of the trial, the jury returned a verdict in favor of the defendants. The appellants appeal the jury's verdict and assert the following assignments of error:
 I. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN OVERRULING PLAINTIFFS'-APPELLANTS' OBJECTION TO DEFENSE COUNSEL'S GOLDEN RULE ARGUMENT.
 II. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN OVERRULING PLAINTIFFS'-APPELLANTS' OBJECTION TO APPELLEE'S QUESTIONING OF THE PLAINTIFF-APPELLANT AS TO WHEN MATTHEW HUNT MADE THE DECISION TO COMMIT SUICIDE.
 III. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN PERMITTING DEFENDANT-APPELLEE DR. SCHULZ TO CALL DR. ELIZABETH MORRISON, AN EXPERT WHO WAS NOT PREVIOUSLY DISCLOSED BY THE DEFENDANTS-APPELLEES PURSUANT TO RULE 21.1 AND PERMITTING DR. MORRISON TO RENDER STANDARD OF CARE OPINIONS AS IT RELATED TO DR. SCHULZ.
 IV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT ALLOWED DEFENDANT-APPELLEE DR. SCHULZ TO RENDER STANDARD OF CARE OPINIONS EVEN THOUGH HE DID NOT QUALIFY, AND WAS NOT COMPETENT TO TESTIFY AS AN EXPERT PURSUANT TO EVIDENCE RULE 601(D).
 V. THE JURY'S VERDICT IS NOT SUSTAINED BY THE MANIFEST WEIGHT OF THE EVIDENCE AND PLAINTIFFS-APPELLANTS ARE ENTITLED TO A NEW TRIAL.
Appellants' first assignment of error involves an allegation of misconduct by the appellees' counsel during opening arguments. The appellants contend that appellees' counsel committed prejudicial error when he asked the jurors to walk in the shoes of Dr. Schulz, which is commonly referred to as the golden rule argument. A `golden rule' argument exists where counsel appeals to the jury to abandon their position of impartiality by placing themselves in the place of one of the parties. Cooley v. Leaseway Transportation Co.(May 20, 1993), Cuyahoga App. Nos. 62198, 62732, unreported, 1993 Ohio App. LEXIS 2631, citing Boop v. The Baltimore Ohio RR. (1963), 118 Ohio App. 171. Courts have further determined that while the golden rule argument is no longer per seprejudicial so as to warrant a new trial, this type of argument remains objectionable. Dillion v. Bundy (1991), 72 Ohio App.3d 767, 775.
Appellees' counsel stated as follows:
 Ms. Reid: As you listen to the evidence in this case, particularly when you listen to the evidence presented on March 3, 1999, I want to ask you to do something for me, I want you to try to walk in Dr. Schulz's shoes knowing what he knew on that day. Don't look back at this case in hindsight, knowing what happened — Mr. Perantinides: Excuse me, your honor, I have to object to that argument.
The Court: Overruled.
 Ms. Reid: I ask you to walk in Dr. Schulz's shoes, sit in his chair as he sat with Matthew Hunt and looked at him face to face for over an hour * * *.
It is well settled that trial counsel is afforded wide latitude during opening statements subject to the restriction that it is impermissible to comment on incompetent, inadmissible or improper evidence which is patently harmful. Dillon (1991) 72 Ohio App.3d at 772 citing Maggio v. Cleveland (1949), 151 Ohio St. 136, paragraph two of the syllabus. The determination of whether or not the proper bounds of closing arguments have been breached is a pure function of the trial court, therefore, this court must look at the court's ruling under an abuse of discretion standard. Only if the circumstances are of such reprehensible and heinous nature as to constitute prejudice will this court reverse a judgment. Kubiszak v. Rini's Supermarket (1991), 77 Ohio App.3d 679, 688, citing Hitson v. Cleveland (Dec. 13, 1990), Cuyahoga App. No. 57741, unreported.
In reviewing the opening statement by Dr. Schulz's counsel, we are not persuaded that those statements resulted in any prejudice to the appellant. The record does not demonstrate that the comments were so heinous or reprehensible that the jury would abandon their position of impartiality or that the appellant would have been prejudiced by the statements. Therefore, appellants' first assignment of error is without merit.
Appellants' second assignment of error contends that the trial court erred by allowing Mrs. Hunt to respond, over objection, to the appellees' question regarding when Matthew Hunt made the decision to commit suicide. The appellants contend that, as a lay witness, it was inappropriate to ask the plaintiff when she felt Matthew made the decision to kill himself. The appellants further contend that Dr. Schulz's counsel committed further prejudice by recounting Mrs. Hunt's statement during closing arguments.
The statement made by Mrs. Hunt is as follows:
 Q. It's your opinion, even though you are not a medical professional, that Matthew made the decision to commit suicide sometime after he went to McDonald's that night?
Mr. Perantinides: Excuse Me. Objection
The Court: Overruled.
 A. I don't I'm not a clairvoyant. As a mother I can't believe that my son would have gone and gone to McDonald's knowing that he was going to die. But I nobody knows his mind.
 Q. * * *. The follow-up question was: `I understand that, but nonetheless I would like to hear your opinion.' Your answer was: `Sure I do. I believe that it happened somewhere in between him stopping at McDonald's and getting to his apartment. It happened within a half hour or 45 minutes from the time he left home.'
Rule 701 pertains to opinion testimony by lay witnesses and states:
 If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony of the determination of fact in issue.
The determination of whether or not a lay witness is qualified to express his or her opinion on the mental state of another is found within the sole discretion of the trial court. State v. Albanese(August 30, 1985), Sandusky App. No. S-84-32, unreported, 1985 Ohio App. LEXIS 8688, at 10; See Rucker v. State (1928), 119 Ohio St. 189. Furthermore, federal courts have allowed both the prosecutor and defense to introduce lay testimony on the issue of sanity under Federal Rule of Evidence 701, see United States v. Lawson(1981), 653 F.2d 299, which is substantially similar to the Ohio rules. Albanese, 1985 Ohio App. LEXIS 8688, at 10-11.
The question by defense counsel was proper in that it went to the decedent's mental state, based on a mother's first-hand knowledge of her son, and was used to assist the jury in determining whether or not Dr. Schulz could have prevented the subsequent suicide or if it was done on the spur of the moment, beyond anyone's control.
Based upon our determination that this question was properly admitted, the statements made by defense counsel during closing arguments must also be found proper and do not constitute prejudice toward the appellants. Therefore, appellants' second assignment of error is without merit.
Appellants' third assignment of error contends that the trial court erred by allowing the appellee, Dr. Schulz, to elicit expert testimony from Dr. Elizabeth Morrison, including standard of care opinions as it related to Dr. Schulz, when this expert was not previously disclosed by the appellees pursuant to Rule 21.1.
The appellants argue that the trial court should not have allowed the appellees to use an expert listed by a dismissed party and that this use constituted a surprise to the appellants which resulted in prejudice toward them. Appellants' contentions are without merit.
Local Rule 21.1 provides in relevant part:
 A party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel.
 It is counsel's responsibility to take reasonable measures, including the procurement of supplemental reports, to insure that each report adequately sets forth the expert's opinion. However, unless good cause is shown, all supplemental reports must be supplied no later than thirty (30) days prior to trial.
 The report of an expert must reflect his opinions as to each issue on which the expert will testify. An expert will not be permitted to testify or provide opinions on issues not raised in his report.
Local Rule 21.1 grants a trial judge discretion to determine whether a party has complied with Loc.R. 21.1 and, in the absence of compliance, to exclude expert testimony. Pang v. Minch (1990), 53 Ohio St.3d 186,559 N.E.2d 1313; Bigley v. Vacca (March 15, 1990), Cuy. App. No. 56649, unreported; Bradford v. Callaghan (November 30, 1989), unreported. Such a determination and exclusion will not be reversed on appeal absent an abuse of discretion. Pang, supra, Bradford, supra. Weyls v. University Hosp. of Cleveland (July 28, 1994), Cuyahoga App. No. 65803, unreported, 1994 Ohio App. LEXIS 3317, at 7-8. The term abuse of discretion has been defined by the Supreme Court of Ohio to be more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary, or unconscionable." Blackmore v. Blackmore (1983), 5 Ohio St.3d 217.
In the case at bar, the trial court denied the appellants' motion to exclude Dr. Morrison as an expert for Dr. Schulz. The trial court further denied appellants' oral motion in limine requesting the same exclusion. This court finds that the actions of the trial court in no way constituted an abuse of discretion. The appellees point out that on three separate instances, they placed the appellants on notice that they reserved the right to call any of the co-defendants' experts. Whether or not the other parties settled and were dismissed from the suit does not negate the fact that the appellants were on notice.
Additionally, the appellants deposed each of the defendants' experts, and at that time, appellants' counsel was not limited in their questioning of Dr. Morrison. The appellants questioned Dr. Morrison regarding the entire time frame of Matthew's treatment until the time of his death. Therefore, Dr. Morrison can appropriately determine the proper standard of care for any of the defendants, including Dr. Schulz, since her review and her deposition covered the entire time period.
Appellants further maintain, in their fourth assignment of error, that Dr. Schulz should not have been allowed to render a standard of care opinion since he is not qualified as a competent expert pursuant to evidence rule 601(D).
The determination of whether or not a medical witness is competent to testify lies within the sound discretion of the trial court. The qualifications of an expert is a matter for determination by the court on the facts, and rulings with respect to such matters will ordinarily not be reversed unless there is a clear showing that the court abused its discretion. Campbell v. Warren Gen. Hosp. (1994), 105 Ohio App.3d 417 at 421, quoting Akron v. Pub. Util. Comm. (1967), 5 Ohio St.2d 237, 242.
Evidence Rule 601 (D) provides:
Every person is competent to be a witness except:
* * *
 (D) A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician
 * * * unless the person testifying is licensed to practice medicine and surgery
 * * * and unless the person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school.
The purpose of the competency requirements of Evid.R. 601(D) is to insure that a person who offers an expert opinion on the issue of liability in a medical malpractice claim is fit by experience to do so. The experience required by Evid.R. 601(D) insures that the witness has some actual knowledge of the daily care of patients, which is the particular foundation that qualifies a witness to opine whether an action by a treating physician deviated from the standard of conduct that his duty of care imposed the predicate basis for liability in a claim of medical malpractice." Fahey v. Abouhossein (February 12, 1999), Montgomery App. No. 17215, unreported, 1999 Ohio App. LEXIS 585, at 3-4.
The appellants in this case maintain that Dr. Schulz does not meet the fifty percent rule for the active practice or teaching of medicine since the majority of his time is spent as an administrator and he sees only a few patients, if any.
The term active clinical practice was addressed in McCrory v. State (1981), 67 Ohio St.2d 99, wherein the Supreme Court of Ohio held that the phrase "active clinical practice" includes not only those physicians who spend their professional time treating patients, but also encompasses the physician-specialist whose work is so related or adjunctive to patient care as to be necessarily included in that definition for the purpose of determining fault or liability in a medical claim. Id. In McCrory, the court held that the doctor spent eighty-five percent of his time as the director of a clinical research department for a pharmaceutical company where he personally conducted research and helped in developing new drugs and was therefore competent to testify as an expert.
In this case, the appellee, Dr. Schulz, stated in his deposition that in January of 1999, he was the chair of the department of psychiatry at Case Western University and working at University Psychiatrists of Cleveland. When asked about his duties as chair, Dr. Schulz stated:
 As chair, as a member of the faculty, my duties as chair were to oversee the educational effort for medical students, to recruit and maintain faculty, to perform teaching and research.
He further stated that fifty to sixty percent of his work week was devoted to his position as chair of the department.
His capacity at University Psychiatrists of Cleveland was as a faculty member and president of the organization. His role as the president consisted of attending board meetings and dealing with purely administrative issues. This case can therefore be distinguished from McCrory.
Dr. Schulz further stated in his deposition that he did take part in several studies while he was chair at Case Western Reserve University; specifically, case studies of teenagers who suffered from schizophrenia and bipolar illness. His role included interviewing several of the case study subjects throughout the course of the study. Dr. Schulz, during his rotation, also acted as the attending physician on one of the units at University Hospitals conducting rounds with the students.
A review of the deposition of Dr. Schulz fails to display that he does, in fact, devote at least half of his professional time to the active clinical practice in his field of licensure. Appellants' fourth assignment of error is therefore sustained.
Appellant's fifth assignment of error is rendered moot.
Judgment reversed and remanded.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellants recover of said appellees costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, P.J., AND JAMES J. SWEENEY, J. CONCUR.