JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant Cortney Robertson, a minor, by and through her mother, Vicky Robertson, appeals the trial court's denial of her motion to amend and motion for default judgment, and the court's permitting University Hospital's ("the hospital") expert witnesses to testify. We find no merit to the appeal and affirm.
 {¶ 2} Cortney Robertson and her parents ("Robertson") filed suit on March 24, 2000, alleging medical malpractice against the hospital, Euclid Clinic Foundation, Bernetta Kavalich, and various John/Jane Doe physicians.[1] The Robertsons claimed that Cortney's brain was injured by the resident physician negligently performing a lumbar puncture on Cortney at three days old, when she had extreme swelling of the brain, leaving her with the brain function of a one-month-old infant.
 {¶ 3} At trial, the experts for Robertson and the hospital disagreed as to the cause of the damage to Cortney's brain. Robertson's experts testified that the brain herniation was caused by resident physician, Dr. Moore, who performed a lumbar puncture on the infant when she had extreme swelling of the brain. According to Robertson's experts, performing such a procedure when the brain was swollen created excess pressure and herniated the infant's brain.
 {¶ 4} The hospital's experts testified that the lumbar puncture did not cause the brain herniation, but opined that Cortney suffered from a rare genetic disease known as Incontinentia Pigmenti (IP), as evidenced by the high amount of protein found in her spinal fluid due to massive brain cell death, along with various other symptoms she exhibited, i.e. skin condition, seizures, and visual impairment. Robertson's treating physicians have also diagnosed her with IP.
 {¶ 5} The jury found the hospital not liable for Robertson's injuries.
 {¶ 6} Robertson asserts six assignments of error on appeal.
 Failure to Obtain Service on Dr. Wright {¶ 7} In the first assignment of error, Robertson claims the trial court committed reversible error by failing to allow Dr. Wright to be served.
 {¶ 8} Pursuant to Civ.R. 4.6(E), the attorney of record is responsible for providing instructions with the clerk's office regarding service on a party. The record indicates that after receiving leave from the trial court to file the second amended complaint, Robertson directed the clerk to obtain personal service on "John Doe, Attending Physician No. 1" instead of "Dr. Wright." Service was attempted on February 7, 2001, but returned on February 8, 2001 as "party not found."
 {¶ 9} It was counsel's responsibility, not the trial court's, to ensure that service was perfected. The record reveals no attempt by Robertson's counsel to correct this error, and when Robertson requested leave to file a third amended complaint, there was no mention made regarding the service error.
 {¶ 10} Robertson's first assignment of error is overruled.
 Denial of Motion for Default Judgment {¶ 11} In her second assignment of error, Robertson contends the trial court erred by not granting her motion for default judgment based on the hospital's failure to answer Robertson's second amended complaint.
 {¶ 12} A review of the record indicates that the second amended complaint was never served upon the hospital. The second amended complaint was filed on December 19, 2000, prior to the trial court's granting leave. In a letter to opposing counsel on December 20, 2000, Robertson's counsel stated that the filing was a mistake and that opposing counsel did not have a duty to answer the complaint. Counsel concluded by stating that "if the court grants the motion I will refile ans (sic) serve or as the Court may direct."
 {¶ 13} Robertson's counsel failed to refile the complaint once the trial court granted the motion for leave. Pursuant to Loc.R. 8(D), "Upon granting a motion [to amend] pursuant to this Rule, the amended pleading shall be served on all parties as provided in Civil Rule 5."
 {¶ 14} The hospital was never properly served with the complaint and therefore had no duty to answer. Thus, the trial court did not err by denying Robertson's motion for default judgment.
 {¶ 15} Robertson's second assignment of error is overruled.
 Denial of Motion to File Third Amended Complaint {¶ 16} In the third assignment of error, Robertson contends the trial court's failure to grant her leave to file the third amended complaint constituted error, because it effectively prevented service upon Dr. Wright, the resident physician.
 {¶ 17} On February 22, 2001, a pretrial was held, and a journal entry following the pretrial indicated that "plaintiff shall file motion for leave to amend by 2/26/01." On February 27, 2001, one day after the deadline, Robertson filed a motion for leave to file the third amended complaint, stating as her reason that she wished to add a claim for "loss of chance." Absolutely no mention was made in the motion for leave regarding the lack of service on Dr. Wright. On March 7, 2001, the trial court denied Robertson's motion for leave.
 {¶ 18} A motion for leave to amend a pleading pursuant to Civ.R. 15(A) should be granted freely when justice so requires. Hoover v.Sumlin (1984), 12 Ohio St.3d 1, paragraph one of the syllabus. The decision whether or not to grant a motion for leave to amend a pleading is within the discretion of the trial court. Turner v. Cent. Local SchoolDist. (1999), 85 Ohio St.3d 95, 99. While Civ.R. 15(A) allows for liberal amendment, such motions should be refused if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party. Id., citingHoover at paragraph two of the syllabus.
 {¶ 19} A motion for leave to amend must be timely filed. SeePeterson v. Teodosio (1973), 34 Ohio St.2d 161, paragraph six of the syllabus; DiPaolo v. DeVictor (1988), 51 Ohio App.3d 166, 170. However, time alone is generally an insufficient reason for the trial court to deny a motion for leave to amend, and the primary consideration is whether there is actual prejudice to the opposing party because of the delay. Schweizer v. Riverside Methodist Hospitals (1996),108 Ohio App.3d 539, 546.
 {¶ 20} Robertson's leave to amend for a third time sought to add an entirely new claim for "loss of chance." At the time that the amendment was requested, trial was scheduled in only four months and the expert reports were due in one month. The proposed amendment would have necessitated more time to conduct discovery directed toward the newly introduced cause of action, causing an expenditure of time and money that, in major part, would have been unnecessary had these issues been raised earlier. The added claim was not "newly discovered" and could have been presented in prior amendments. Therefore, the addition of the claim was prejudicial and would cause further delay.
 {¶ 21} Furthermore, no mention was made in the motion for leave that the purpose of filing the third amended complaint was to obtain service on Dr. Wright. The trial court provided ample opportunity for Robertson to add Dr. Wright as a party and to obtain service on Dr. Wright. As stated above, the second amended complaint was never properly served on Dr. Wright due to counsel's error. The trial court thereafter gave Robertson until February 26, 2001 to file yet a third amended complaint, nearly one year after refiling the original complaint. Robertson instead filed a motion for leave one day after the deadline, seeking to add an additional claim.
 {¶ 22} An appellate court will reverse a trial court's decision on a motion to amend a complaint only if the trial court abused its discretion. We find no abuse of discretion under these circumstances.
 {¶ 23} Robertson's third assignment of error is overruled.
 Denial of Motion to Consolidate {¶ 24} In her fourth assignment of error, Robertson claims that the trial court erred in denying her motion to consolidate her new case filed against Wright[2] with the case against the hospital.
 {¶ 25} Since Robertson's motion to consolidate was merely a tactic to subvert the trial court's denial of her motion to amend, we find the trial court did not abuse its discretion in denying the motion to consolidate.
 {¶ 26} Robertson's fourth assignment of error is overruled.
 Expert Testimony of Dr. Mandl {¶ 27} Robertson claims in her fifth assignment of error that the trial court erred in permitting Dr. Mandl to testify because he does not meet the expert requirements of Evid.R. 601(D). According to Robertson, Dr. Mandl spends most of his time devoted to research and not clinical practice.
 {¶ 28} The qualifications of an expert is a matter for determination by the court on the facts, and its rulings with respect to such matters will ordinarily not be reversed unless there is a clear showing that the court abused its discretion. Campbell v. Warren Gen.Hosp. (1994), 105 Ohio App.3d 417 at 421, quoting Akron v. Pub. Util.Comm. (1967), 5 Ohio St.2d 237, 242.
 {¶ 29} Evidence Rule 601(D) provides in pertinent part:
 {¶ 30} "Every person is competent to be a witness except:
 {¶ 31} "* * *
 {¶ 32} "(D) A person giving expert testimony on the issue of liability in any claim asserted in any civil action against a physician * * * unless the person testifying is licensed to practice medicine and surgery * * * and unless the person devotes at least one-half of his or her professional time to the active clinical practice in his or her field of licensure, or to its instruction in an accredited school."
 {¶ 33} The purpose of the competency requirements of Evid.R. 601(D) is to insure that a person who offers an expert opinion on the issue of liability in a medical malpractice claim is qualified by experience to do so. The experience required by Evid.R. 601(D) insures that the witness has some actual knowledge of the daily care of patients, which is the particular foundation that qualifies a witness to opine whether an action by a treating physician deviated from the standard of conduct. Fahey v. Abouhossein (Feb. 12, 1999), 10th Dist. No. 17215.
 {¶ 34} The term "active clinical practice" was defined by the Ohio Supreme Court in McCrory v. State (1981), 67 Ohio St.2d 99. The Court held that the phrase includes not only those physicians who spend their professional time treating patients, but also encompasses the physician-specialist whose work is so related or adjunctive to patient care as to be necessarily included in that definition for the purpose of determining fault or liability in a medical claim. Id. In McCrory, the Court held that the testifying doctor who spent eighty-five percent of his time as the director of a clinical research department for a pharmaceutical company was competent to testify as an expert.
 {¶ 35} In the instant case, Dr. Mandl testified that he is a full-time pediatric emergency medicine physician at Boston Children's Hospital at Harvard. His position includes "patient care, supervising fellows and residents and medical students in patient care; supervising their learning and doing research to improve patient care * * *." (Tr. at 64). Dr. Mandl admitted that "some weeks" he spends approximately forty to fifty hours a week on research, which would include only sixteen to thirty-two hours attending to patients. Pursuant to McCrory, the time Dr. Mandl dedicates to research is considered "active clinical practice." He, therefore, clearly meets the criteria of Evid.R. 601(D).
 {¶ 36} We find the trial court did not abuse its discretion in permitting Dr. Mandl to offer expert testimony. Robertson's fifth assignment of error is overruled.
 Expert Testimony by Dr. Paller and Dr. Zimmerman {¶ 37} In her sixth assignment of error, Robertson argues that the trial court erred in permitting Drs. Paller and Zimmerman to testify that IP caused the injury to Cortney's brain, because their testimony as to the cause of the baby's brain injury was not qualified pursuant to Evid.R. 702(B) and (C).
 {¶ 38} Evid.R. 702 sets forth the requirements for an expert to qualify to testify. Evid.R. 702(B) and (C) require that:
 {¶ 39} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 40} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:
 {¶ 41} "(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;
 {¶ 42} "(2) The design of the procedure, test, or experiment reliably implements the theory;
 {¶ 43} "(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."
 {¶ 44} Robertson claims that Paller and Zimmerman should not have been permitted to testify because they could not explain how the biological pathway of IP causes brain damage in some patients but not others. Robertson argues that because the gene mutation that causes IP has only recently been discovered, the correlation between brain injury and IP has not yet been determined. Robertson also claims that Dr. Paller admitted she had never seen a case of brain herniation associated with IP.
 {¶ 45} This court addressed a similar issue in Smith v. Dillard'sDept. Stores, Inc. (Dec. 14, 2000), Cuyahoga App. No. 75787. In Smith, the defendant challenged the qualifications of the plaintiff's expert neurologist on the grounds that his deposition revealed that science had not yet explained why plaintiff's condition (dystonia) occurred, or why peripheral trauma would cause such a condition. This court held that such a challenge goes to the weight of the evidence in showing the causal relationship between the injury and the dystonia.
 {¶ 46} "It is clear from Dillard's argument that it has mistaken an Evid.R. 702(C) challenge to the `reliability' of evidence with a challenge to the `weight' of the evidence that tends to show the causal relationship between Smith's dystonia and the June 3, 1992 injury. It does not contest that: (1) dystonia is a recognized disease that may result from peripheral trauma; or that (2) various doctors diagnosed Smith with the disease; or (3) the methodology or means of reaching Smith's diagnosis of dystonia. See Miller, 80 Ohio St.3d at 611. It claims only that the scientific community cannot explain how or why peripheral trauma may result in dystonia. Such a challenge goes to the weight of the evidence rather than the reliability of the evidence determining cause and effect." Id.
 {¶ 47} Similarly, in the instant case, IP is a recognized disease and it is undisputed that Cortney has the disease. The dispute is whether IP or the lumbar puncture caused the brain herniation. Simply because the biological pathway connecting IP to brain damage in some patients cannot be explained, does not make such evidence inadmissible. Such evidence would go to the weight of the evidence, not its reliability. Therefore, the issue of whether IP was the cause of the brain trauma was a matter for the jury in weighing the evidence.
 {¶ 48} We note that Dr. Zimmerman was not permitted to testify regarding IP due to his lack of experience regarding the disease. The trial court only permitted Dr. Zimmerman to testify to the fact that Cortney's extensive bilateral brain swelling preceded her admittance to the emergency room by eighteen to twenty-four hours and that the lumbar puncture did not cause her brain damage.
 {¶ 49} The trial court did not abuse its discretion in permitting Drs. Paller and Zimmerman to testify. Robertson's sixth assignment of error is overruled.
Judgment is affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J. and ANN DYKE, J. CONCUR
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] The Robertsons originally filed suit on January 4, 1997, but voluntarily dismissed the suit. In the second suit filed on March 24, 2000, all the defendants, except the hospital, were dismissed, and the only plaintiff remaining was Cortney because of statute of limitation problems with the other plaintiffs.
[2] Robertson filed a second action, Case No. 444683, in common pleas court against Dr. Wright and the hospital. That case was dismissed without prejudice on July 29, 2002.